LEWIS T. TEAGUE *v.* JOHN W. PERRY.

A note, given subsequently, in purchase of a Magistrate's judgment which
    had been won at cards by the payee from the maker, is not void under
    the statute against *gaming*.
The statute (Rev. Code, c. 51, sec. 2,) which avoids all *judgments*, &c.,for
    and on account of any money, or property, or thing in action wager-
    ed, bet, &c., does not include judgments taken *in invitum*, but only
    such as are confessed, or taken by consent.
(*Hudspeth* v. *Wilson*, 2 Dev. 372, and *Warden* v. *Plummer*, 4 Jon. 524,
    cited and approved.)

ACTION, for an injunction to stay proceedings, tried by
*Tourgee, J.*, at Fall Term 1869, of CHATHAM Court.

The facts were, that in 1860 the defendant, as endorsee of
one Dorsett, had recovered judgment before a Magistrate upon
a certain note given by the plaintiff to Dorsett; that the
plaintiff had appealed from that judgment to the Superior
Court of Chatham, and that at Spring Term 1867, no pleas
having been entered in the Superior Court, judgment was again
given against the plaintiff and one Peggy Teague, his surety
for the appeal, and that execution had been taken out, and
levied, &c.; also that the note in question had been given by
the plaintiff to Dorsett in payment for a magistrate's judg-
ment once in the hands of the plaintiff as constable, which
some days before, had been *won at cards* of him by Dorsett.

His Honor having ordered the injunction to be perpetuated, the defendant appealed.

*Manning,* for the appellant.

1. The *judgment* was the thing won, and when delivered it could not have been recovered by Teague, therefore the note he gave in purchase of it, is binding, and not affected by the statute against *gaming.* *Hudspeth* v. *Wilson,* 2 Dev., 372.

2. There is no *equity* here for the plaintiff; his defence against the case at law, was not *equitable,* nor was he deprived of that which he had, by fraud, accident or surprise.

3. The word *judgments,* in the statute against gaming, does not include judgments taken in suits regularly constituted, and in due course of the Court.

He cited also *Stowell* v. *Guthrie,* 2 Hay., 297; *Hodges* v. *Pitman,* 2 Car. Law Rep., 276; *Wood* v. *Wood,* 3 Mur. 17: *Forest* v. *Hart,* Ib. 458; *Turner* v. *Peacock,* 2 Dev., 303; *Webb* v. *Fulchire,* 3 Ire., 485; *Jones* v. *Jones,* N. C. Term 110.

*Phillips & Merrimon, contra.*

The word *judgments* was inserted in the statute against gaming, in 1856, and therefore previous decisions do not affect our position. The policy is that the *infection* of gaming pursues the transaction and all substitutes for it, to the last moment at which it is necessary to resort to the law for aid.

PEARSON, C. J. We do not concur in the view of the case taken by His Honor.

1. Suppose, for the sake of argument, that the note was given to secure the payment of money won at cards, a judgment "*in invitum*" was taken against L. T. Teague, before

a Justice of the Peace in 1860, from which judgment he appealed, and Peggy Teague, the other plaintiff, became his surety. At Spring Term 1867, judgment was entered against both of them. This put an end to the controversy; and the parties are estopped by record, from now setting up any matter of which they might have taken benefit by way of defence to that action. "*Interest reipublicæ ut sit finis litium*" is a maxim in every system of law. In pleadings by the course of the common law, Lord Coke says, "good matter must be pleaded in due form, apt time and proper order." After judgment the question touching a gaming consideration, was *res adjudicata,* and could not be again presented, except on writ of error.

2. But the note was not given to secure the payment of money won at cards, it was given to secure the price for a judgment on one Emerson. It is true that this judgment had been won at cards, but it had passed to, and became the property of one Dorsett, just as if a horse had been won instead of the judgment. It is settled that money, or a horse, or a judgment, won at cards and actually paid and delivered, cannot be recovered back, the game being fairly played. *Hudspeth* v. *Wilson,* 2 Dev., 372; *Warden* v. *Plummer,* 4 Jon. 524, takes this as settled, and is put on the ground that the party was *cheated* in the play.

3. Mr. Phillips properly yielded these points, and rested his case on the word "judgment" in the statute, Rev. Code, ch. 51, sec. 2: "All contracts, judgments, conveyances and assurances for and on account of any money, or property, or thing in action, so wagered, bet or staked, shall be void;" insisting that the effect of this provision is to make void *any judgment* rendered on a gaming consideration, and to take it out of the maxim and rule referred to above in reference to *res adjudicata.*

It will be observed that the judgment taken by Perry against the plaintiffs, was not on a note given for a gaming consideration, but for the price of a judgment; so the point

does not hit our case. But suppose it does: a construction of the statute by which to give to the introduction. of the word "judgments" in connection with the words "contracts, conveyances, and assurances," the effect of making an exception to a settled rule of law, is inadmissible. Had it been the intention to make this exception, and allow solemn judgments of the Courts to be avoided by matter which could have been relied on as a defence to the action, plain and direct words were called for, and would have been used; especially as full operation can be given to the word, by treating it as used in the sense of a judgment confessed, or allowed by consent, in order to secure the payment of money won at cards; like a mortgage, deed of trust or other assurance given for that purpose. The use of the word "judgment" in the sense of a *security given for money*, in the next preceding chapter, ch. 50, sec. 1, in connection with the same words, furnishes a conclusive analogy: "Every gift and conveyance of land, goods, &c., and every bond, suit, *judgment* and *execution* made with intent to defraud creditors shall be void," &c. Here, "judgment" is evidently used in the sense of a judgment confessed, with intent to defraud creditors. There, it is used in the sense of a judgment confessed with intent to secure money won at cards. There is no reason to infer that the word was used in either statute for the purpose of abrogating a well settled and highly beneficial principle of law, by which an end is put to litigation.

There is error.

PER CURIAM.                                          Error.